**WHITE & CASE LLP**
1221 Avenue of the Americas
New York, New York 10020-1095
(212) 819-8200
John K. Cunningham
Thomas E. MacWright
Ricardo M. Pasianotto

Southeast Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131
(305) 371-2700
Richard S. Kebrdle (admitted *pro hac vice*)
Amanda Parra Criste (admitted *pro hac vice*)

111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
(312) 881-5400
Jason N. Zakia (admitted *pro hac vice*)

*Attorneys for Antonio Reinaldo Rabelo Filho,*
*as Petitioner and Foreign Representative*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | |
| | ) | Case No. 24-12291 (MG) |
| InterCement Brasil S.A., *et al.*,[1] | ) | |
| | ) | Chapter 15 |
| Debtors in a Foreign Proceeding. | ) | (Jointly Administered) |
| | ) | |

## NOTICE OF FILING OF CERTIFIED TRANSLATION OF
## DECEMBER 5, 2024 DUTCH COURT ORDER

**PLEASE TAKE NOTICE** that on December 9, 2024, Antonio Reinaldo Rabelo Filho
(the "**Petitioner**" or "**Foreign Representative**"), in his capacity as the duly-authorized foreign
representative (as such term is defined in section 101(24) of title 11 of the United States Code,
11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**")) of the above-captioned debtors (the "**Chapter
15 Debtors**"), commenced the above-captioned cases under chapter 15 of the Bankruptcy Code

---

[1]    The debtors in these chapter 15 cases, along with the last four digits of each debtor's tax identification number in
their applicable jurisdiction of incorporation, are as follows: InterCement Brasil S.A. (01-36 – Brazil);
InterCement Participações S.A. (01-22 – Brazil); InterCement Financial Operations B.V. (3771 – Netherlands);
and InterCement Trading e Inversiones S.A. (7798 – Spain).

(the "**Chapter 15 Cases**") by filing the forms of voluntary petition and the *Petitioner's Declaration and Verified Petition for Recognition of the Brazilian Proceeding and Motion for Order Granting Related Relief Pursuant to 11 U.S.C. §§ 105(a), 1515, 1517, 1520, and 1521* [ECF No. 2] (the "**Verified Petition**")[2] and the forms of voluntary petition [ECF No. 1] with the United States Bankruptcy Court for the Southern District of New York seeking recognition of the jointly-administered protective injunction proceeding in support of a judicial reorganization (*recuperação judicial)* (the "**Brazilian RJ Proceeding**") of the Chapter 15 Debtors and certain of their affiliated debtors, which commenced on December 3, 2024 pursuant to Federal Law No. 11.101 of February 9, 2005, of the laws of the Federative Republic of Brazil, pending before the 1st Bankruptcy and Restructuring Court of São Paulo (the "**Brazilian Bankruptcy Court**").[3]

    **PLEASE TAKE FURTHER NOTICE** that as noted in the Verified Petition, the Foreign Representative hereby files a certified translation of the order entered by the Dutch Court on December 5, 2024, attached hereto as **Exhibit A**.

*[Remainder of Page Left Intentionally Blank]*

---

[2]    Capitalized terms not otherwise defined herein shall have the meanings given to such terms in the Verified Petition.

[3]    The case number for the Brazilian RJ Proceeding before the Brazilian Bankruptcy Court is 1111483-72.2024.8.26.0100.

Dated: December 15, 2024
New York, New York

Respectfully submitted,

WHITE & CASE LLP

By: */s/ John K. Cunningham*
    John K. Cunningham

**WHITE & CASE LLP**
1221 Avenue of the Americas
New York, New York 10020-1095
(212) 819-8200
John K. Cunningham
Thomas E. MacWright
Ricardo M. Pasianotto
jcunningham@whitecase.com
tmacwright@whitecase.com
ricardo.pasianotto@whitecase.com

Southeast Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131
(305) 371-2700
Richard S. Kebrdle (admitted *pro hac vice*)
Amanda Parra Criste (admitted *pro hac vice*)
rkebrdle@whitecase.com
aparracriste@whitecase.com

111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
(312) 881-5400
Jason N. Zakia (admitted *pro hac vice*)
jzakia@whitecase.com

*Attorneys for Antonio Reinaldo Rabelo Filho,*
*as Petitioner and Foreign Representative*

## Exhibit A

**Certified Translation of the December 5, 2024 Dutch Court Order**

# acolad.

## Translation Certificate

Acolad Netherlands, LLC certifies that the document *Beschikking InterCement Nederland.pdf*, (project number NL-DRG2412010) was translated from Dutch to English by a translator fluent in both Dutch and English.

Acolad Netherlands, LLC certifies that the translation services were performed in a professional manner, using qualified individuals and in accordance with generally recognized commercial practices and standards.

*Dorien Renting*                    **13-12-2024**

Acolad Netherlands, LLC signature         Date issued

COPY

# decision

**AMSTERDAM DISTRICT COURT**

Private Law Division

**applications for ending or extending a stay period**

application numbers: C/13/759152 FT RK 24.1022 and 759854 FT RK

4.1077

date of the decision: 5 December 2024

decision on the application with annexes, application number C/13/759152 FT RK 24.1022, submitted by:

the legal entity under foreign law
**Redwood Master Fund, Ltd,**
established at Grand Cayman, Cayman
Islands,
hereinafter referred to as: "the Investment
Fund",
attorneys: L.P. Kortmann, A.J.C.M. Meijs, and C.M.A. Knoben,

requesting to end the stay period (*afkoelingsperiode*) within the meaning of Article 376(11) of the Dutch Bankruptcy Act granted with regard to:

the private company
**InterCement Financial Operations B**.**V.,**
having its registered office in Amsterdam,
listed in the Chamber of Commerce under number 34123771,
attorneys: F.J.M. Hengst, R.G.A. Eikerbout-Kok, C.D. Veldman, and P. van der Veen,

and on the application requesting an extension of the stay period within the meaning of Article 376(5) of the Dutch Bankruptcy Act, with annexes, number C/13/759854 FT RK 24.1077, submitted by:

the private company
**InterCement Financial Operations B**.**V.,**
having its registered office in Amsterdam,
listed in the Chamber of Commerce under number 34123771,
hereinafter referred to as: InterCement Nederland,
attorneys: F.J.M. Hengst, R.G.A. Eikerbout-Kok, C.D. Veldman, and P. van der Veen.

## 1. The proceedings

1.1.    The course of the proceedings is evidenced by the following case documents:
- the decision of the District Court of 31 July 2024, ordering a four-month stay period in respect of InterCement Nederland, with the appointment of F. Verhoeven as observer (hereinafter: "the Observer");
- the application submitted by the Investment Fund, with annexes, to end the stay period, dated 1 November 2024;

- the views of the board of InterCement Nederland, with annexes, dated 18 November 2024;

T10

application numbers: 753552 FT RK 24.690 and 754123 FT RK 24.725

- the views of Redwood Drawdown Master Fund III, LP et al. (hereinafter: "the Ad Hoc Group:"), with annexes, dated 18 November 2024;
- the views of UMB Bank N.A. (hereinafter: "the Trustee"), with annex, dated 18 November 2024;
- The views, also containing an application requesting an extension of the stay period, with annexes, submitted by InterCement Nederland, dated 18 November 2024;
- the views of the Observer, with annexes, dated 19 November 2024;
- the speaking notes of attorney Meijs on behalf of the Investment Fund; '
- the speaking notes of attorneys F.J.M. Hengst, R.G.A. Eikerbout-Kok, C.D. Veldman and P. van der Veen on behalf of InterCement Nederland.
- the speaking notes of attorney N.B. Pannevis on behalf of the Ad Hoc Group;
- the speaking notes of attorneys V.R. Vroom, B. Kemp, and A.J. Dunki Jacobs on behalf of the board of InterCement Nederland;
- the speaking notes of attorney T. Elseman on behalf of the Trustee.

1.2.    The applications were heard simultaneously during the public hearing of 21 November 2024. The hearing was attended by video link – other than merely as an observer, like the Brazilian, Spanish and American counsels of the InterCement group, by:

*on the part of the Investment Fund and the Ad Hoc Group:*
-    Ms M. de Oliveira Martins,
-    attorneys L.P. Kortmann, A.J.C.M. Meijs, C.M.A. Knoben, attorneys in Amsterdam, on behalf of the Investment Fund,
-    attorneys N.B. Pannevis and D.M. van de Loo, on behalf of the Ad Hoc Group

*on the part of (the board of) InterCement Nederland:*
-    M.A. Zangari;
-    L.A. Klecz,
-    L. Brazinskas;
-    M.P.A. Stoop;
-    P. Mahabier,
-    attorneys R.G.A. Eikerbout-Kok, P. van der Veen, F.J.M. Hengst, C.D. Veldman, attorneys practising in Amsterdam, on behalf of InterCement Nederland,
-    attorneys B. Kemp and A.J. Dunki Jacobs, attorneys practising in Amsterdam, on behalf of the board of InterCement Nederland,
-    K. Skarbnik, L. Almeida Prates and C. Saettini, representatives of the InterCement group,
-    A. Burrough, interpreter,

*on the part of the Observer:*
-    F. Verhoeven, observer,
-    K.H. van Boekei-Burg, D.V.J.S. van der Heijden, and C.R. Zijderveld, colleagues of the Observer,

*on the part of UMB Bank N.A.:*
-    T. Elseman, attorney in Amsterdam.

application numbers: 753552 FT RK 24.690 and 754123 FT RK 24.725

3

## 2.  The application and views of the Investment Fund

2.1.      The Investment Fund requests that the stay period imposed in respect of InterCement Nederland be ended, and, if an extension is requested, that the stay period not be extended.

2.2.      To that end, the Investment Fund submitted - briefly put and insofar as is relevant - :
i) InterCement Nederland has not started preparations or initiated negotiations with creditors for a composition under the Dutch Court Approval of a Private Composition (Prevention of Insolvency) Act (*Wet homologatie onderhands akkoord;* "WHOA composition) that may be approved by the Court;
(ii) it is not necessary to grant a stay period to allow InterCement Nederland to continue its activities;
iii) the interests of the creditors are not served by the stay period, but on the contrary are currently harmed by the stay period and by the actions performed by InterCement Nederland during the stay period with regard to its assets.

2.3.      On 16 September 2024 InterCement Nederland decided - without prior consultation with or informing its creditors and without informing the Brazilian court about the ongoing WHOA Procedure - to join the consolidated insolvency proceedings in Brazil (hereinafter: "the EJ Proceedings") and submitted an EJ Plan in that context. It has become apparent that the WHOA Procedure and the stay period granted under this procedure are only used to exclude the creditors of InterCement Nederland from the discussions on the restructuring of the Group currently taking place in Brazil. At the same time, InterCement Nederland refuses to provide any information to its creditors and believes that it is sufficient to inform the Observer. The Investment Fund is of the opinion that InterCement Nederland is attempting to deprive its creditors of their rights, or at least to prejudice them, and filed a petition for the bankruptcy of InterCement Nederland together with the present application.

2.4.      InterCement Nederland does not want to reach a WHOA composition that will meet the Court's approval. InterCement Nederland has stated that it is merely a financing vehicle and does not carry out any activities, a situation for which a stay period is not intended. Moreover, InterCement Nederland tries to circumvent Dutch law by making contradictory statements in the various international legal proceedings regarding its centre of main interests. Because InterCement Nederland has agreed to join the consolidated Brazilian proceedings, it cannot perform its obligations under the WHOA. On 11 October 2024, InterCement Nederland submitted a memorandum containing a provisional overview of the terms and conditions of a future WHOA composition, but this does not contain any financial details whatsoever and the information that is provided makes it clear that the (intended) content thereof does not constitute a WHOA composition that might meet the approval of the Court.

2.5.      InterCement Nederland has stated that it is entirely dependent on the success of a purchase agreement to be concluded with CSN at group level, but has not made clear to its creditors in any way why this is the case. InterCement Nederland does contend that a WHOA composition would be a condition for CSN to agree to the transaction. No proof of this has been provided. InterCement Nederland is only using the stay period to avoid having to negotiate with its creditors.

application numbers: 753552 FT RK 24.690 and 754123 FT RK 24.725

4

Given these circumstances, InterCement Nederland is unable to timely conclude a WHOA composition and the criteria of Article 376(1) of the Dutch Bankruptcy Act are no longer met.

### 3.   The application and views of InterCement Nederland

3.1.     InterCement Nederland has requested an extension of the stay period with four months, until 31 March 2025. It explained its arguments in more detail at the hearing. Put briefly, insofar as is relevant here, these arguments are the following.

3.2.     As a member of the InterCement group InterCement Nederland is involved in a complex restructuring requiring it to navigate multiple national and international procedures in an attempt to generate maximum proceeds for its creditors.

3.3.     Since the Court's decision of 31 July 2024, in which it ordered a stay period, InterCement Nederland and the InterCement Group have made significant progress. The best possible result for the Group and its creditors can be achieved by selling the Group to CSN, as part of the Brazilian restructuring procedure. In the meantime, the terms and conditions of the sale of the Group to CSN have been fully negotiated and a final *share purchase agreement* (hereinafter: "the SPA") has virtually been agreed between Mover and CSN. The Group has furthermore prepared a restructuring agreement in the EJ Procedure, based on the sale, which will be submitted for approval in the Brazilian Procedure shortly after the SPA is signed. InterCement Nederland may subsequently offer a parallel composition in the present WHOA Procedure. This means that progress can be made with regard to a composition under the WHOA as well. After all, the WHOA composition will reflect the EJ plan. It is in the interest of InterCement Nederland and of its joint creditors that the timelines of the present WHOA Procedure are harmonised to all possible extent with the proceedings in Brazil and the other relevant jurisdictions. Being a financing vehicle, InterCement Nederland itself does not generate any income. InterCement Nederland's principal asset is a receivable with a nominal value of approximately USD 1.2 billion from its group company InterCement Trading e Inversiones S.A. (ITI Esp), which it cannot expect to be substantially paid in case of liquidation. InterCement Nederland is therefore dependent on a solution at group level for any composition that it might offer its creditors. for this reason InterCement Nederland considers an extension of the stay period necessary and justified. The continuous attempts of the Ad Hoc Group, of which the Investment Fund is part, to obtain more detailed information than it is entitled to and to affect the stable platform for the restructuring are solely aimed at improving its own negotiating position, to the detriment of the company and the joint creditors. Just like the present request for ending the stay period and the petition for bankruptcy, this complicates and delays the sale of the Group to CSN and the presentation of a restructuring agreement.

3.4.     InterCement Nederland asserts the following with regard to the request to end the stay period. The Investment Fund and the other members of the Ad Hoc Group have been regularly and adequately informed by the Group about the global restructuring and are therefore well aware of the progress made by InterCement Nederland and the Group. On 16 September 2024, the InterCement Group submitted a draft EJ Plan to its creditors.

application numbers: 753552 FT RK 24.690 and 754123 FT RK 24.725

5

The advisors of InterCement Group and of the Ad Hoc Group, of which the Investment Fund is part, are in regular contact, on which occasions the Ad Hoc Group is given insight in the progress made regarding the proposed transaction with CSN and the outlines of the restructuring plan based on it. Moreover, the stay period is necessary in order to be able to continue the activities carried on by InterCement Nederland. The interests of the joint creditors are served by an extension of the stay period and the interests of third parties are not materially harmed by such extension. The Trustee does not represent all holders of Notes; for example he does not represent the 'internal' holders of Notes. The petition for the bankruptcy of InterCement Nederland filed by the Ad Hoc Group alone makes it clear that the stay period should be extended to prevent the bankruptcy of InterCement Nederland or to avoid other recourse actions. Furthermore, there is no reason to assume, as the Investment Fund asserts, that the (proposed) WHOA plan will not meet the Court's approval.

3.5.    The Court will discuss the grounds put forward by InterCement Nederland in more detail below - where relevant.

**4.    The views of the board of InterCement Nederland**

4.1.    The board of InterCement Nederland (hereinafter: "the Board") has asked the Court to deny the Investment Fund's request and to grant its request to extend the stay period and submits the following to that end - put briefly insofar as is relevant. .

4.2    It is disputed that the Board would "render InterCement Nederland's assets worthless" by writing off intra-group receivables, including the loans granted by InterCement Nederland to ITI Esp, or by subordinating them to the proposed EJ agreement. This is because in the event of a liquidation the loans granted by InterCement Nederland to ITI Esp will not represent any value. Furthermore, intra-group receivables are subordinated under Spanish law. In the absence of a worldwide restructuring InterCement Nederland cannot expect payment of this receivable either. It is incumbent on CSN, as the prospective buyer of the Group, to determine how intra-group receivables will be settled. The proposed *going concern* sale to CSN will yield the most value, something the Investment Fund fails to recognise.

4.3    The Board of InterCement Nederland is wrongly accused of failing to comply with its disclosure obligation. The Group voluntarily and regularly discloses detailed information to the advisors of the Ad Hoc Group, subject to *non-disclosure agreements* (NDAs), which, however, for reasons of their own, the Dutch attorneys of Ad Hoc Group refuse to sign. At this stage of the proceedings, InterCement Nederland has no obligation, by law or otherwise, to provide information. Pursuant to Article 375(1) of the Bankruptcy Act, detailed information – on the basis of which interested parties can form an informed opinion on the composition – must be disclosed when the composition is put to the vote. As soon as the WHOA composition is put to the vote, the Board will disclose the necessary information to those entitled to vote. InterCement Nederland is, however, obliged to provide the Observer with all relevant information (both upon request and unsolicited), which it has in fact done.

application numbers: 753552 FT RK 24.690 and 754123 FT RK 24.725

5.    **The views of the Ad Hoc Group and the Trustee**

5.1.    The Ad Hoc Group concurs with the Investment Fund's assertions in the application
for ending the stay period and also concludes for ending the stay period, or that it not be
extended.

5.2.    The Trustee, in his capacity as representative of holders of all Notes - on the
understanding that Noteholders affiliated with InterCement Nederland, such as ITI Esp, were
not considered - also supports the Investment Fund's request for ending the stay period. He
concurs that InterCement Nederland does not meet the statutory requirements for a stay period.
The stay period is used for a different purpose than for reaching a composition; is not necessary
to continue the activities; and does not serve the creditors' interests but solely the interests of
the Group and the shareholders. The Trustee moreover remarks that none of the holders of the
Notes have informed him that they do not support, or that they oppose, the request for ending
the stay period, from which it reasonably follows that no holder of the Notes considers the stay
period to be in his interest and supports it.

6.    **The Observer's views**

6.1.    The Observer has issued his views in writing and explained these in more detail during
the hearing. Put briefly, and insofar as is relevant here , his arguments are as follows.

6.2.    The Observer is of the opinion that InterCement Nederland has provided him with
adequate information and that the relationship with InterCement Nederland is good. The
Observer notes that the talks conducted with InterCement Nederland's creditors are mainly held
at group level (between advisors) in Brazil. Based on his observations of and his reports on
these talks, the Observer is unable to say whether or not negotiations about the EJ Plan or the
WHOA composition are actually taking place. There is regular contact between InterCement
Nederland and the Ad Hoc Group. The Observer is unable to say whether these contacts
constitute an adequate or necessary disclosure or exchange of information within the context of
the WHOA. Since it is incumbent on the debtor itself to address the substantive objections of
creditors as effectively as possible, the Observer proposes that InterCement Nederland, together
with PwC, enter into talks with the advisors of the Ad Hoc Group, in any event to discuss how
the analyses for calculating the liquidation and restructuring values should be interpreted.

6.3.    The Observer is unable to state, at this stage, whether the Ad Hoc Group and the
Trustee and the Bondholders, respectively, will be better off - as they contend - in the event of
bankruptcy than in the event of a (WHOA) composition, or at any event that their interests are
better served and protected by a receiver. Nor is the Observer able to state whether the
anticipated restructuring value will be higher than the liquidation value. PwC's analyses, among
other things, will have to provide the necessary insight into this, but these are not yet available.

application numbers: 753552 FT RK 24.690 and 754123 FT RK 24.725

7

6.4.    As regards the progress made in entering a composition, the Observer deems it important that InterCement Nederland has engaged the services of PwC. It is furthermore a fact that for further preparatory action, InterCement Nederland is to a large extent dependent on the progress made in the EJ Proceedings.

6.5.    The Observer concludes that the Trustee and the Ad Hoc Group seriously object to the overall restructuring process of the Group in general. It may therefore be concluded that InterCement Nederland has to date failed to reach out to its external creditors. The Trustee considers the petition for bankruptcy to be in the interest of all holders of the 2024 Bonds. By his own assertions, the Trustee may be deemed to serve the interests of all holders of the 2024 Bonds. The application for ending the stay period was submitted by the Ad Hoc Group. The conclusion is therefore that all of InterCement Nederland's external liabilities oppose the WHOA Procedure. In view of this, the Observer finds little reason to fundamentally change the assessment of the interests of the joint creditors. In this respect, he furthermore considers it relevant that the intercompany creditors, who are part of the joint creditors, do not expect any distribution under the composition.

6.6.    The Observer is (as yet) unable, on the basis of the information provided to him, to sufficiently objectify that there is a prospect that a consolidated group composition will by definition provide added value to the creditors of InterCement Nederland. He does not rule out that if further information is made available by InterCement Nederland - e.g. the PwC reports - there might be a prospect of added value. In anticipation of this information, it is relevant that there are sufficient external creditors that agree to this. At present, this does not seem to be the case. It is currently unclear to the Observer whether InterCement Nederland will succeed in reaching a composition that will meet the approval of the court, within the meaning of Article 380(2) of the Bankruptcy Act, and whether the request for an extension may be granted.

6.7. If the request for an extension is granted, the Observer deems it a requisite to change the provision of information to the (external) creditors and that there is a prospect of meaningful talks and negotiations about the EJ Plan and the WHOA composition (preferably in such a manner that the Observer is able to observe them). In view of the noted profound differences of opinion, but also to ensure the progress of the EJ Proceedings and Chapter 15, it does not stand to reason to grant a long extension of the stay period.

6.8.    Lastly, regarding the petition for bankruptcy, the Observer notes that even if InterCement Nederland is declared bankrupt, whether or not in combination with a composition, implementation of an EJ Plan would still be possible.

## 7.    The assessment

*Jurisdiction and competence*

7.1.    Since the District Court has previously declared that it has (territorial) jurisdiction in the context of these composition proceedings outside bankruptcy, it also has jurisdiction, in view of Article 369(8) of the Bankruptcy Act, to hear the present applications.

application numbers: 753552 FT RK 24.690 and 754123 FT RK 24.725

8

The Investment Fund, the Ad Hoc Group and the Trustee contend that InterCement Nederland is creating confusion by taking opposing positions in proceedings abroad, in particular in the United States and Brazil, on InterCement Nederland's '*centre of main interest*' (COMI). InterCement Nederland denies this and does not dispute that its COMI, given its registered office and the presumption of Article 3(1) Insolvency Regulation, is located in the Netherlands and has not changed in the past three months.

The Court therefore sees no reason to reconsider its earlier finding regarding its international jurisdiction in the decision of 31 July 2024. InterCement Nederland has not submitted anything at the hearing further to which the Court should have found that the presumption that InterCement Nederland's centre of main interests is somewhere other than in Amsterdam should be accepted. This means that the current WHOA Procedure is the main insolvency proceeding with regard to InterCement Nederland. These main insolvency proceedings have universal effect and aim to encompass all assets of the debtor.

7.2.     The Court finds that InterCement Nederland's request for an extension of the stay period may be granted, since it was received by the court registry on 18 November 2024, and therefore before the end of the previously ordered stay period on 30 November 2024 (Article 376(5) of the Bankruptcy Act).

7.3.     Pursuant to Article 376(5) of the Bankruptcy Act, the Court must now assess whether InterCement Nederland has succeeded in making a plausible case that it has made significant progress towards reaching the composition. The Court must furthermore assess whether the requirements of Article 376(4) of the Bankruptcy Act are (still) met.

7.4.     The Court finds that a sufficiently plausible case has been made that important progress has been made in reaching a composition. Although strictly speaking no WHOA composition has been offered, InterCement Nederland, as (one of the) EJ petitioners, did present a (draft) EJ Plan in Brazil. InterCement Nederland intends the WHOA composition to reflect the EJ Plan. In the Court's opinion, and as the Observer has also argued, Article 376(1) of the Bankruptcy Act should not be interpreted as so broad in scope that a (virtually complete) WHOA composition should be on the table within two months.

7.5.     With regard to the requirement of Article 376(4)(a), the District Court refers to what was held in ground 5.7. of its decision of 31 July 2024, which still applies in full.

7.6.     It has not been concretely substantiated in any way that the interests of the holders of the Notes are harmed by the stay period, as the Investment Fund contends and with which the Ad Hoc Group and the Trustee concur.  Although InterCement Nederland has sufficiently explained that it is probable that more value can be generated for the creditors (including those of InterCement Nederland) if the proposed transaction with CSN and the restructuring process - of which the WHOA procedure forms part - take place, the Investment Fund solely reacted to this by merely asserting that the holders of Notes will be better off if InterCement Nederland is declared bankrupt than if a composition is offered. The Investment Fund has also failed to provide concrete arguments for its assertion that the interests of the joint creditors are harmed by the stay period because in the EJ Proceedings InterCement Nederland will give up its assets, and that the creditors of InterCement Nederland would be better off if a receiver were to defend their interests.

application numbers: 753552 FT RK 24.690 and 754123 FT RK 24.725

9

At this time - and in any event for as long as PwC's findings from their analysis of the liquidation and restructuring values are not yet available, not even for the Observer - the Court deems the assumptions of the Investment Fund unverifiable. In the Court's opinion, no plausible case has been made that the interests of InterCement Nederland's creditors will be harmed if the stay period is not ended but is continued for the time being. It is also considered in this respect that it would seem that the EJ Plan will be submitted to the joint creditors for approval in due course, at which time the members of the Ad Hoc Group will also be given the opportunity to cast their vote on that plan.

7.7.    In connection with the foregoing, the District Court attaches great weight to the fact that the Observer, who has been appointed for the benefit of the joint creditors, has stated that he is being adequately informed by InterCement Nederland and the Group of the developments in the conclusion of the WHOA composition. He receives at least weekly updates, has been given insight into the proposed transaction with CSN, as well an explanation of the proposed *waterfall* of the transaction proceeds, is included in PwC's analyses of the valuations and has access to (procedural) documents of the worldwide restructuring. The Observer is also sufficiently informed about the course of events in the EJ proceedings and Chapter 15. Partly on the basis of the statements made by InterCement Nederland at the hearing, the Court finds no reason to assume that any change will take place in this flow of information towards the Observer.

7.8.    This is not altered by the fact that InterCement Nederland does not seem to provide meaningful information to the (external) creditors (as the Observer was unable to establish either). It has become clear, however, that the Ad Hoc Group, or at least its advisors, are involved in the EJ Plan in Brazil, or at least have access to certain information in that context. Still, it is important to note here that the legislature placed the core of the duty to disclose in the WHOA scheme at the time of offering and voting on the composition. At that moment all information must be disclosed that voting creditors and shareholders need to be able to form an informed opinion on the composition before the vote is held. Nevertheless- also in view of the major (international) interests at play here - the Court considers it in the interest of InterCement Nederland that providing information to the creditors is initiated and maintained as timely and as completely as possible. This is because the Court finds that this may be conducive for a proper mutual understanding, which in turn serves the interest of a composition to be offered and approved. At the hearing InterCement Nederland signalled its willingness to provide meaningful information to its creditors. The Court assumes that InterCement Nederland will fulfil this commitment. However, in view of the foregoing it cannot be assumed, at this stage of the proceedings, that the joint creditors are harmed in their interests to be respected at law due to the current inadequate provision of information.

7.9.    InterCement Nederland has requested a four-month extension of the stay period. Partly in view of the status of the (draft) EJ Plan already presented in Brazil, as set out in more detail at the hearing, which plan will be reflected in the present WHOA composition, the Court will limit the extension of the stay period to a period of two months, starting from 30 November 2024.

application numbers: 753552 FT RK 24.690 and 754123 FT RK 24.725

10

7.10.    During the extension of the stay period the Observer will continue to supervise the forming of the composition, taking into account the interests of the joint creditors, as set out earlier in the decision of 31 July 2024. The Observer will be required to inform the Court, and if necessary must submit a request to revoke his appointment, as soon as he notes that the factual grounds on which the extension of the stay period granted here is based, have changed.

7.11.    Although the Observer has stated that he receives adequate information from InterCement Nederland, the Court reiterates the following. In view of the provisions of Article 380(4) of the Bankruptcy Act in conjunction with Article 371(7) and (8) of the Bankruptcy Act, the Observer has the right to access all relevant information of the debtor and to obtain information from directors and shareholders. This should allow the Observer to carry out his supervisory task and, with that in mind, to monitor as closely as possible the debtor's preparations for and negotiations on a composition.

7.12.    The foregoing entails that the Investment Fund's request to end the stay period will be denied.

## 8.   The decision

The Court:

- extends the stay period ordered by decision of 31 July 2024 by two months, starting from 30 November 2024;

- orders InterCement Nederland to provide the Observer with all information he may request, in a manner to be determined by the Observer; to grant the Observer access to all locations as may be necessary for him to perform his task; and to provide the Observer with all other assistance as may be necessary for him to perform his task;

- orders InterCement Nederland to inform the Observer of its own accord about any facts or circumstances which it knows or should know to be material for the Observer to be able to properly perform his task.

- dismisses all other applications;

- denies the request to end the stay period.

This decision was made by A.E. de Vos, President, and R.P. van Eerde and K.M. van Hassel, Judges, in the presence of F.T.M. Bruning, Clerk of the Court, and pronounced in open court on 5 December 2024.

ISSUED AS A TRUE COPY
THE REGISTRAR OF THE AMSTERDAM DISTRICT COURT

[signature] [signature]