CLEARY GOTTLIEB STEEN & HAMILTON LLP
Richard J. Cooper
David H. Botter
Luke A. Barefoot
Thomas S. Kessler
David Z. Schwartz
Thomas Q. Lynch
One Liberty Plaza
New York, New York  10006
Telephone: 212-225-2000
Facsimile: 212-225-3999

*Counsel to the Ad Hoc Group*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 15 |
| InterCement Brasil S.A., *et al.,*[1] | Case No. 24-12291 (MG) |
| Debtors in a Foreign Proceeding | Jointly Administered |

**AD HOC GROUP'S (I) OBJECTION**
**TO THE PETITIONER'S VERIFIED PETITION**
**AND (II) OPPOSITION TO THE PETITIONER'S BRIEF**
**ON COMI DETERMINATION AS OF THE DECEMBER 9,**
**2024 FILING DATE FOR CHAPTER 15 DEBTORS IC FINANCIAL AND ITI**

---

[1] The debtors in these chapter 15 cases, along with the last four digits of each debtor's tax identification number in their applicable jurisdiction of incorporation, are as follows: InterCement Brasil S.A. (01-36 – Brazil); InterCement Participações S.A. (01-22 – Brazil); InterCement Financial Operations B.V. (3771 – Netherlands); and InterCement Trading e Inversiones S.A. (7798 – Spain).

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................ 1

BACKGROUND ............................................................................................ 3

    A.    The AHG's Actions Before The Previous Chapter 15
          Cases .................................................................................... 3

    B.    ITI's and ICBV's Subsequent Insolvency Filings;
          the AHG's Continued Exclusion .......................................... 4

    C.    Subsequent Developments In The Various
          Insolvency Proceedings ...................................................... 5

    D.    Following the Prior Recognition Hearing,
          the Patently Unfair EJ Plan Collapsed ............................... 7

ARGUMENT ................................................................................................. 8

    I.    This Court Should Not Recognize The RJ As A Foreign
        Main Proceeding With Respect To ICBV And ITI. ................. 8

        A.    The Petitioner remains bound by the Dutch Court's
             and Spanish Court's COMI determinations. .................... 8

        B.    The Prior Brazilian Proceedings did not shift either
             ICBV's or ITI's COMI. .................................................. 10

             1. *Restructuring activities in Brazil are neither*
             *relevant nor determinative with respect to the*
             *COMIs of ICBV and ITI.* ................................... 11

             2. *The Petitioner's additional factual arguments do*
             *not support a determination that ICBV or ITI have*
             *their COMIs in Brazil.* ...................................... 15

             a.   The principal places of business of ICBV and ITI
                 are not in Brazil. ......................................... 15

             b.   Other relevant factors also weigh in favor of
                 COMI outside of Brazil. .............................. 18

    II.    This Court Should Also Deny Foreign Nonmain
        Recognition Because Neither ITI nor ICBV Have an
         Establishment in Brazil. .................................................... 21

**Page**

CONCLUSION ............................................................................................................. 26

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

<u>Cases</u>

*Fuld v. Palestine Liberation Organization*,
  82 F.4th 74 (2d Cir. 2023) .............................................................................  14

*In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*,
  374 B.R. 122 (Bankr. S.D.N.Y. 2007) ...........................................................  23, 25

*In re Betcorp Ltd.*,
  400 B.R. 266 (Bankr. D. Nev. 2009)...............................................................  15

*In re British Am. Isle of Venice (BVI), Ltd.*,
  441 B.R. 713 (Bankr. S.D. Fla. 2010) .............................................................  15

*In re Creative Fin. Ltd.*,
  543 B.R. 498 (Bankr. S.D.N.Y. 2016) .......................................................  13, 21, 22

*In re InterCement Brasil S.A.*,
  Case No. 24-11226 (MG) (ECF No. 79) ..........................................................  4

*In re Kemsley*,
  489 B.R. 346 (Bankr. S.D.N.Y. 2013) .............................................................  21

*In re Matter of Videology Ltd.*,
  [2018] EWHC 2186..................................................................................  21, 24-25

*In re Millennium Glob. Emerging Credit Master Fund Ltd.*,
  458 B.R. 63 (Bankr. S.D.N.Y. 2011) ........................................................  21, 22, 25

*In re Modern Land (China) Co., Ltd.*,
  641 B.R. 768 (Bankr. S.D.N.Y. 2022) ..........................................................  *passim*

*In re Mood Media Corp.*,
  569 B.R. 556 (Bankr. S.D.N.Y. 2017) ...............................................  21, 23, 24, 25

*In re OAS S.A*,
  533 B.R. 83 (Bankr. S.D.N.Y. 2015) ...........................................................  16, 17, 20

**Page(s)**

*In re Pirogova,*
  593 B.R. 402 (Bankr. S.D.N.Y. 2018) ........................................................ 22, 23, 25

*In re Serviços de Petróleo Constellation S.A.,*
  600 B.R. 237 (Bankr. S.D.N.Y. 2019) ................................................. 15, 19, 22, 23

*In re Serviços de Petróleo Constellation S.A.,*
  613 B.R. 497 (Bankr. S.D.N.Y. 2020) ................................................. 16, 17, 21, 23

*In re SPhinX, Ltd.,*
  351 B.R. 103 (Bankr. S.D.N.Y. 2006) ........................................................... 15, 21

*In re Sunac China Holding Ltd.,*
  656 B.R. 715 (Bankr. S.D.N.Y. 2024) ................................................. 11, 14, 18-19

*In re Suntech Power Holdings Co.,*
  520 B.R. 399 (Bankr. S.D.N.Y. 2014) ............................................................... 14

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Georgiadias,*
  903 F.2d 109 (2d Cir. 1990) ............................................................................. 9

*Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.),*
  714 F.3d 127 (2d Cir. 2013) .................................................................. 11, 15, 17

*New Hampshire v. Maine,*
  532 U.S. 742 (2001) ...................................................................................... 10

*Rothstein v. Am. Int'l Grp., Inc.,*
  837 F.3d 195 (2d Cir. 2016) ............................................................................ 17

*Telenor Mobile Commc'ns AS. v. Storm LLC,*
  587 F. Supp. 2d 594 (S.D.N.Y. 2008) .............................................................. 17

*Trs. of Olympic Airlines SA Pension and Life Assurance Scheme v Olympic Airlines SA*
  [2015] UKSC 27........................................................................................ 21-22

**Rules and Statutes**

11 U.S.C. §§ 1502(2) ...................................................................................... 21

**Other Authorities**

H.R. Rep. No. 109-31(I) (2005).......................................................................... 22

**Page(s)**

InterCement, *Investor Relations*, https://intercement.com/en/investidores/
(last visited Jan. 31, 2025) ................................................................................. 20

The ad hoc group (the "<u>AHG</u>") of holders of the NY Notes,[2] hereby submits this objection and opposition (together, the "<u>Objection</u>") to the Verified Petition and Supplemental Brief.

## <u>PRELIMINARY STATEMENT</u>

1.      The Petitioner's first attempt at recognition revealed that neither ICBV's nor ITI's COMIs are in Brazil.  Rather, the record showed that they are in the Netherlands and Spain, respectively.  Moreover, the record laid bare how the Petitioner sought to take advantage of this Court, and multiple other courts, by making facially contradictory representations regarding the COMIs of both ICBV and ITI.  But this scheme ultimately failed: the Prior Brazilian Proceedings collapsed shortly after the prior recognition hearing because they failed to garner <u>any</u> creditor support other than from a minority consisting of certain of ICP's and ICB's local Brazilian banks.

2.      Having failed once, the Petitioner now returns to this Court peddling a new theory as to why the RJ should be recognized based on virtually the same record.  But nothing in his Supplemental Brief or the fact that the Petitioner shifted from seeking recognition of the Prior Brazilian Proceedings to seeking recognition of the RJ, changes ICBV's and ITI's COMIs.  The Petitioner's newfound thesis is that activities in Brazil in connection with the failed Prior Brazilian Proceedings were of such significance that ICBV's and ITI's COMIs shifted to Brazil.  But this new theory (which was tellingly missing from the Petitioner's prior recognition efforts) falls flat when confronted with the law and the facts, as do the Petitioner's other arguments.

3.      <u>First</u>, the Petitioner remains barred by judicial estoppel, collateral estoppel, and *res judicata* (as applicable) from arguing that ICBV and ITI each have a second COMI in Brazil.  As set forth by the AHG previously, ICBV explicitly told the Dutch Court that its COMI is in the Netherlands and ITI pointed solely to COMI as the basis for the Spanish Court's jurisdiction.  Both

---

[2]      Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Verified Petition or Supplemental Brief, as applicable.

courts relied on these representations to reach their COMI holdings.  ICBV even doubled down on its COMI representation in subsequent proceedings before the Dutch Court, which confirmed that it relied on ICBV's representations to conclude that ICBV's COMI is in the Netherlands.

4.    Second, activities related to the Prior Brazilian Proceedings have not caused a COMI shift for ICBV and ITI.  Neither entity fits any of the limited scenarios under which courts have found a COMI shift to the location of a restructuring proceeding.  Moreover, the Petitioner's additional factual arguments—including regarding principal place of business and nerve center, the law governing most disputes, the location of principal assets, the provision of general group-wide investor relations, and the supposed effort to maximize value through the RJ—do not support finding that ICBV's and ITI's COMIs are in Brazil.  Rather, the COMIs of ICBV and ITI remain where they have always been:  the Netherlands and Spain.

5.    Third, the Petitioner has failed to prove that ICBV and ITI have establishments in Brazil.  Neither has a physical place of business in Brazil that engages with the local Brazilian economy, and the provision of general group-wide investor relations services by ICP personnel based in Brazil does not transform ICP's headquarters into an establishment for ICBV or ITI. Additionally, activities related to the Prior Brazilian Proceedings, and the presence of debts or assets in Brazil alone, are insufficient to give rise to an establishment in Brazil for either entity. Even under the minority of cases that recognize an establishment based on downstream holdings in Brazilian entities, ICBV simply has no such holdings.  Nor does the case law cited by the Petitioner or the purpose of the Model Law support overriding the near-total lack of engagement with the Brazilian economy by either entity in order to grant nonmain recognition here.

## BACKGROUND[3]

**A.    The AHG's Actions Before The Previous Chapter 15 Cases**

6.      The AHG formed in June 2023 in response to the Chapter 15 Debtors' refusal to meaningfully engage with individual holders regarding InterCement Financial Operations B.V.'s ("ICBV") plan for repayment of the NY Notes.[4]  Even after its formation, however, the Chapter 15 Debtors refused to provide substantive information or engage on their plans to repay their debts. Therefore, on June 28, 2024, the AHG filed the Brazilian Early Discovery Action against ICP and ICB, the guarantors of the NY Notes, as well as ICBV, seeking fundamental information typically provided to creditors, including in particular regarding the allocation of proceeds from the sale of certain assets owned by ICP and ICB.[5]  The AHG filed this action in Brazil because, as ICP and ICB are both Brazilian entities, the proceeds of such sales would have likely flowed through (or to) entities based in Brazil.[6]

7.      On July 9, 2024, still lacking even basic information regarding ICBV's plan to repay the NY Notes, Redwood filed the first insolvency-related petition with respect to ICBV, seeking the appointment of a restructuring expert in the Netherlands.[7]  On July 15, 2024, two days before the NY Notes matured, ICB, ICP, ITI, ITI Argentina, ICBV and Mover (collectively, the

---

[3]       The relevant background and facts with respect to ICBV and ITI were the subject of extensive briefing and a two-day evidentiary hearing in the Previous Chapter 15 Cases.  *See, e.g.*, *Ad Hoc Group's Objection to Verified Petition and Verified Supplement*, Case No. 24-11226 (MG) (Bankr. S.D.N.Y. Nov. 6, 2024) (ECF No. 61) (the "EJ Obj.").  The AHG accordingly recounts herein only the background relevant to this Objection and/or necessary to correct mischaracterizations in the Verified Petition and Supplemental Brief.

[4]       *See* Verified Petition ¶ 18.

[5]       *See* JX-282, Ex. 15 (the "Brazilian Bondholder Complaint").

[6]       *See* Verified Petition ¶ 9(ii)-(iii) (ICP and ICB incorporated in Brazil); *id.* at ¶ 28 (detailing sale of operations in Paraguay, the Middle East, and Africa); JX-1 at 8 (demonstrating ICP's and ICB's direct or indirect ownership of the sold assets). *See also* Brazilian Bondholder Complaint ¶¶ 5-6.  For similar reasons, the AHG filed a judicial protest against ICP, ICB, and ICBV in Brazil, in order to safeguard its rights.  *See* Lynch Decl., Ex. 1 (the ""EJ Interlocutory Appeal").

[7]       *See* JX-282, Ex. 16 (the "Redwood Petition").

"Mediation Debtors"), initiated the Brazilian Mediation.[8]  ICB, ICP, ICBV, and ITI initiated the

Previous Chapter 15 Cases in this Court on the same day.[9]

**B.    ITI's and ICBV's Subsequent Insolvency Filings; the AHG's Continued Exclusion**

8.    On July 16, 2024, ITI filed the Spanish Notice with the Spanish Court, initiating

the "Spanish Proceedings."[10]  ITI represented that the Spanish Court's jurisdiction was based

solely on ITI's COMI, and that the Spanish Court had jurisdiction because ITI's registered office

is in Bilbao.[11]  The Spanish Court agreed, and found that it had jurisdiction because ITI's COMI

is in Spain.[12]  The next day ICBV filed a commencement statement in the Dutch Court, initiating

voluntary public WHOA proceedings (the "Dutch Proceedings"), in which ICBV affirmatively

represented to the Dutch Court that its COMI is in the Netherlands.[13]  It is undisputed that ICBV

had a duty to disclose to the Dutch Court any facts that would point to a contrary COMI finding.[14]

The Dutch Court found that it "has jurisdiction to open these insolvency proceedings as main

proceedings, given that the centre of [ICBV's] main interests is situated in the Netherlands."[15]

9.    Meanwhile, in Brazil, despite a number of virtual mediation sessions, the Mediation

Debtors excluded the AHG from substantive negotiations, provided only basic financial

information, and did not provide any concrete proposal as to how ICBV intended to resolve its

obligations to Noteholders. [16]   Despite this, the AHG continued to attempt constructive

---

[8]      *See* JX-282, Ex. 18.
[9]      *See* Verified Petition ¶ 1.
[10]     *See* JX-282, Ex. 13 (the "Pre-Insolvency Notice").  ITI Argentina was also a party to the Spanish Proceedings.
*Id.*
[11]     *Id.* at 13.
[12]     *See* JX-282, Ex. 27 (the "Spanish Acknowledgement").
[13]     *See* JX-282, Ex. 21 (the "ICBV Commencement Statement") at 2.
[14]     *See In re InterCement Brasil S.A.*, Case No. 24-11226 (MG) (the "EJ Recognition Proceedings") (ECF No.
79) ¶ 69; Lynch Decl., Ex. 3 (the "Suppl. Haentjens Dep.") at 17:24–18:15.
[15]     *See* JX-282, Ex. 5 (the "July 31 Dutch Order") ¶¶ 5.2.  The Dutch Court confirmed that ICBV did not offer
any evidence that its COMI was not in the Netherlands and that the Dutch Proceedings are ICBV's main proceedings.
*See infra* ¶ 12.
[16]     *See* EJ Recognition Proceedings (ECF No. 94, the "Nov. 21, 2024 Hr'g Tr.") at 119:15–24.

engagement, including by voluntarily staying the Brazilian Early Discovery Action and refraining from taking actions in the Dutch Proceedings.[17]  Efforts to establish transparency through NDAs stalled because the Mediation Debtors refused them and ultimately provided only restricted agreements that failed to grant the AHG meaningful access to necessary information.[18]  The AHG first proposed a draft NDA on July 25, 2024, yet despite  multiple follow-up requests, the Mediation Debtors provided no response, no counterproposal, and no explanation for the delay.[19]  The Mediation Debtors did not agree to an NDA until mid-August, by which time substantive negotiations (without ICBV's primary third-party creditors) were well underway.[20]  This initial NDA, however, was limited in scope and, given the lack of substantive information sharing it contemplated and the restrictions it nonetheless imposed, the AHG terminated it in late August.[21]

10.     Eventually, the Mediation Debtors reached an "agreement in principle" on the EJ Plan with, notably, only certain of their Brazilian third-party creditors—none of whom were creditors of ICBV or non-contingent creditors of ITI.[22]

**C.     Subsequent Developments In The Various Insolvency Proceedings**

11.     In Brazil, on September 16, 2024, the EJ Debtors filed the EJ Petition, attaching a placeholder EJ Plan missing several key sections.[23]  On September 24, 2024, the AHG challenged the Brazilian Bankruptcy Court's plenary jurisdiction over ICBV and ITI on the basis that, *inter*

---

[17]     *See* Lynch Decl., Ex. 4 (the "Discovery Action Stay Request"); AHG Limited Obj. ¶ 1 n.3;.

[18]     JX-280 (providing only basic financial information without essential insight into any ongoing restructuring).

[19]     *See* EJ Recognition Proceedings (ECF No. 93, the "Nov. 20, 2024 Hr'g Tr.") at 134:23–135:4; Nov. 21, 2024 Hr'g Tr. at 116:1–5.

[20]     *See* Supplemental Br. ¶ 15.

[21]     *Id.*

[22]     *See* EJ Recognition Proceedings (ECF No. 30), Ex. B ("EJ Plan").

[23]     The EJ Debtors included all Mediation Debtors save for Mover.  *See* JX-241.  The Brazilian Court entered an order accepting the EJ Petition on the same day.  *See id*.  *See* EJ Plan at 1.1.84, 3, 7.1.5, 7.4 (failing to provide detail on terms of CSN's proposal, including whether transaction would be a merger or buyout and identity of the issuer of securities); *id.* at 1.1.64, 1.1.65, 5.1.4, 5.1.4.2 (failing to specify details regarding new equity); *id.* at 1.1.68, 4.3.1, 4.3.2, 5.1(i), 5.1.3.1 (failing to provide details regarding issuer of debentures); *id.* at 64 (failing to provide details regarding payment waterfall in connection with ICP's sale to CSN, including resulting value to creditors); *see also* EJ Recognition Proceedings (ECF No. 30), Ex. A ("EJ Petition"), at 38 n.33.

*alia*, neither are Brazilian companies.[24]  The Brazilian Bankruptcy Court rejected this challenge on October 24, 2024, and on November 14 the AHG filed a further appeal.[25]  Throughout this time, the EJ Debtors continued to exclude the AHG, responding to diligence requests and uploading documents to a data room with substantial unexplained delays, failing to respond to other requests, and providing largely public information.[26]  Further, the AHG was only given access to the purchase agreement with Companhia Siderúrgica Nacional ("CSN") on November 14—days before its execution deadline and with significant restrictions imposed on the AHG's review.[27]

12.    In the Netherlands, the court-appointed Observer issued his initial report on October 4, 2024, acknowledging the AHG's concerns that non-Brazilian creditors had been shut out of the Brazilian Mediation, negotiations with CSN, and other critical discussions.[28]  On November 1, 2024, Redwood asked the Dutch Court to lift the cooling-off period and, in response, ICBV requested a four-month extension.[29]  As part of its request, ICBV was obligated to inform the Dutch Court if its COMI had changed.[30]  ICBV stated that its COMI had not changed.[31]  On November 19, 2024, the Observer concluded in his second report that ICBV had "failed to bridge the gap" with its external creditors[32] and stated that ICBV had a duty to address the AHG's objections.[33]  ICBV indicated it would provide the Observer and the AHG with an action plan, but

---

[24]    *See* Lynch Decl., Ex. 1.  The AHG's also argued that both ICBV and ITI had already commenced plenary proceedings in their home jurisdictions.  *Id.*

[25]    *See id.*

[26]    *See* Nov. 21, 2024 Hr'g Tr. at 116:1-9; Verified Petition, Ex. D ¶ 33.  Although the Petitioner testified that the AHG was given access to the Sales Purchase Agreement on November 14, 2024, the AHG's advisors did not receive it until November 20, 2024.

[27]    *See* Nov. 20, 2024 Hr'g Tr. at 134:23-135:24.

[28]    Supplemental Br., Ex. A ¶ 4.3.1.

[29]    *See Notice of Filing of Certified Translation of December 5, 2024 Dutch Court Order* (ECF No. 25), Ex. A (the "<u>Dec. 5 Dutch Order</u>") ¶ 2.2.

[30]    Suppl. Haentjens Dep. at 23:8–20.

[31]    Haentjens Decl. (ECF No. 32), at ¶ 10; Suppl. Haentjens Dep. at 23:22-24:4; Lynch Decl., Ex. 5 ¶ 52.

[32]    Supplemental Br., Ex. B ¶ 5.4.

[33]    *Id*. at ¶ 4.4.14.

failed to do so.[34]  On December 5, 2024, the Dutch Court, (i) extended the cooling-off period until January 30, 2025, (ii) confirmed that ICBV's COMI is in the Netherlands, (iii) reiterated that ICBV had not offered any evidence to conclude that ICBV's COMI was anywhere else, (iv) confirmed that the Dutch Proceedings are ICBV's main proceedings, and (v) confirmed that such main insolvency proceedings have universal effect and are intended to cover all of the debtor's assets.[35]

13.    In Spain, on October 17, 2024, the Spanish Court extended ITI's cooling-off period to January 16, 2025.[36]  And in the United States, the Petitioner filed the Verified Supplement on September 17, 2024.[37]  Thereafter, Petitioner and the AHG engaged in extensive discovery and briefing, which culminated in an evidentiary hearing before this Court in late November.[38]

**D.    Following the Prior Recognition Hearing, the Patently Unfair EJ Plan Collapsed**

14.    On December 3, 2024, after it became clear that the EJ Debtors would be unable to obtain creditor support for the EJ Plan, the RJ Debtors commenced a *recuperação judicial* proceeding (the "RJ"), which the Brazilian court accepted on December 5.[39]  On December 9, the Chapter 15 Debtors filed the Verified Petition, commencing these Chapter 15 cases.[40]  The AHG is appealing the Brazilian court's order accepting the RJ and imposing a stay, seeking to, *inter alia*, reverse the Brazilian Court's decision to exercise plenary jurisdiction over ICBV and ITI.[41]

---

[34]    *See* Lynch Decl., Ex. 6 ("January Observer Report") at 3.

[35]    *See* Dec. 5 Dutch Order; Observer Dep. at 20:10–21:6 (explaining that the "literal reading" of the Dec. 5 Dutch Order "means that the court . . . sees no reason to reconsider its decision on COMI that it made on July 31st").

[36]    *See* JX-283, Ex. C at 2.

[37]    *See generally Petitioner's Verified Supplement*, EJ Recognition Proceedings (ECF No. 30).

[38]    *See Recognition Hearing Management and Scheduling Order*, EJ Recognition Proceedings (ECF No. 46).

[39]    *See* Laquimia Decl., Exs. B-C.  The RJ was commenced by the EJ Debtors as well as Mover, Sucea, and Sincro.  *See Motion for Provisional Relief* (ECF No. 5) ¶ 2.  Despite these new parties in Brazil, the Chapter 15 Debtors before this Court are the same parties as those who initiated the Chapter 15 recognition proceedings for the Brazilian EJ.  *See* EJ Recognition Proceedings, (ECF No. 97), Dec. 16, 2024 Hr'g Tr. at 6:8–12 ("[E]ven though it is a new case, required new petitions, a new Chapter 15, that factual record, because the Debtors are the same, can be imported into this case … and will be applicable.").

[40]    *See generally* Verified Petition.

[41]    *See* Lynch Decl., Ex. 7 (the "RJ Interlocutory Appeal").  On December 18, 2024, the AHG's prior appeal regarding the EJ Proceeding was closed because the appeal had become moot with the filing of the RJ.  Lynch Decl.,

# ARGUMENT

## I.    This Court Should Not Recognize The RJ As A Foreign Main Proceeding With Respect To ICBV And ITI.

### A.    The Petitioner remains bound by the Dutch Court's and Spanish Court's COMI determinations.

15.    As set forth in the AHG's prior briefing, judicial estoppel, collateral estoppel, and *res judicata* (as applicable) bar the Petitioner from asserting that the COMIs of ICBV and ITI are in Brazil.[42]  Subsequent events only confirm that the Petitioner is barred from arguing before this Court that ICBV and ITI each have a second COMI elsewhere.[43]

16.    Indeed, in mid-November in the Netherlands, as part of its request to extend the cooling-off period, ICBV was required by Dutch law to inform the Dutch Court if its COMI or the facts relevant to its COMI had changed.[44]  ICBV <u>again</u> affirmatively represented to the Dutch Court that its COMI is in the Netherlands, stating that "its COMI has not been moved during the past three months."[45]  At the hearing on ICBV's extension request, the Dutch Court confirmed that it relied on ICBV's Commencement Statement in finding ICBV's COMI was in the Netherlands and that, if ICBV believed its COMI was in Brazil, it would have expected ICBV to have made that representation in July when it initiated the Dutch Proceedings.[46]  And in its December 5, 2024

---

Ex. 10 (the "<u>EJ Appeal Order</u>").  The appellate court emphasized that the challenged decision (which accepted plenary jurisdiction over ICBV and ITI) had been entirely superseded by the RJ filing.  *Id.*

[42]    *See generally* EJ Obj. ¶¶ 16–44.

[43]    *See* Dec. 5 Dutch Order.

[44]    Suppl. Haentjens Dep. at 20:14–18 ("So when a party generally requests an extension or requests any motion, it must provide the court with the relevant information it has to its disposal for the court to decide on that request."); 56:18-57:5 ("When it confirmed to the Dutch courts that COMI had not shifted…there were no facts and circumstances that led the company to come to the conclusion that its COMI had shifted.").

[45]    Lynch Decl., Ex. 5 (the "<u>ICBV November Extension Request</u>") at ¶ 52. Suppl. Haentjens Dep. at 58:15-21 ("Yeah, so if a statement would have been made to comply with the procedural requirements and COMI would have shifted, then the company could not have confirmed to the court that COMI was in the Netherlands…").

[46]    *See* Lynch Decl., Ex. 8 (the "<u>Observer Dep.</u>") at 14:12-19 (Mr. Kessler: "And do you recall during that hearing statements by the Dutch Court that it had relied on ICBV's commencement statement when determining ICBV's [COMI]?" Mr. Verhoeven: "Yes."); *id.* at 22:17–22 ("[T]he court would have expected InterCement to bring forth any facts or circumstances that would lead to another determination of COMI than the Netherlands at the hearing in the summer.").

order granting a two-month extension of the cooling-off period, the Dutch Court stated that ICBV had provided "no reason to reconsider its earlier finding" regarding ICBV's COMI.[47]

17.    When ICBV requested another extension of the cooling-off period on January 24, 2025, it was again obligated to inform the Dutch Court if its COMI or the relevant facts had changed.[48]  Again—only a week ago and well after the filing of the Supplemental Brief—ICBV maintained its conflicting position that, despite what Petitioner advocates for here, ICBV's COMI remains in the Netherlands.[49]  These supplemental representations themselves foreclose Petitioner's new theory before this Court that restructuring-related activities in Brazil have somehow shifted or supported a Brazilian COMI for ICBV.  *See, e.g.*, EJ Obj. ¶¶ 17, 32, n.82 (discussing requirements for estoppel and *res judicata*) And in Spain, at the time of filing the Verified Petition, ITI was subject to a binding decision by the Spanish Court that its COMI is in Spain (that ITI chose not to appeal).[50]  Any subsequent events in Spain (which were plainly engineered to boost Petitioner's recognition efforts here) are therefore of no moment.[51]

---

[47]    Dec. 5 Dutch Order ¶ 7.1; Observer Dep. at 20:24-21:23 (Mr. Verhoeven: "[B]ased on the hearing of November 24th, the hearing that led to [the Dec. 5] decision in combination of course with the papers filed, that the court sees no reason to reconsider its decision on COMI that it made on July 31st.").

[48]    Suppl. Haentjens Dep. at 20:14–18.

[49]    Suppl. Haentjens Dep. at 55:5-8; *see generally* Lynch Decl., Ex. 9 (the "ICBV Jan. Extension Request").

[50]    *See* JX-282, Ex. 20 ("Ruiz Dep.") at 95:6-19 (discussing procedure for correction of a court order under Spanish law and ITI's choice not to pursue this procedure).  ITI's statement to the Spanish Court that it intended to seek recognition of the proceedings in Brazil as main proceedings is irrelevant as ITI had not made such a request when the Verified Petition was filed.  *See* Supplemental Br. ¶ 13.

[51]    Although ITI stated to the Spanish Court that it intended to seek recognition of the proceedings in Brazil as main proceedings, ITI had not made such a request when the Verified Petition was filed.  *See* Supplemental Br. ¶ 13. Further, the facts that ITI subsequently forum-shopped its way within Spain to obtaining a conflicting decision from a different Spanish court and then allowed its pre-insolvency proceeding to expire is irrelevant for purposes of judicial estoppel, collateral estoppel or *res judicata* because the Spanish Court had adopted ITI's assertions concerning its COMI as of the Petition Date.  *Cf. Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Georgiadias*, 903 F.2d 109, 114 (2d Cir. 1990) (holding that if a case is voluntarily dismissed before a ruling on the issue it cannot be used for estoppel purposes).  Estoppel is even more warranted here, as ITI's filing of its request to recognize the RJ before a different Spanish court (which the Petitioner failed to inform this Court of), notwithstanding the fact that it already had a pending proceeding at the time, smacks of the Petitioner's well-worn judicial gamesmanship.  *See supra* ¶ 13 (ITI's cooling-off period extended to January 16, 2025); *Statement Notifying the Court of Developments in the Foreign Proceedings in Brazil Pursuant to 11 U.S.C. § 1518 and 28 U.S.C. § 1746* (ECF No. 34), Ex. A at 1 (ITI filed recognition request on January 6, 2025); *id.* at 4 (recognizing RJ as main proceeding).  Notably, this directly

9

18.     Attempting to avoid ICBV's and ITI's representations, the Petitioner again incorrectly asserts that COMI under U.S. and EU law is meaningfully different.[52]  But, as the AHG previously demonstrated, it is substantively the same.[53]  In addition, the facts that (a) the Dutch Court confirmed its COMI determination as to ICBV, and that (b) ICBV represented again to the Dutch Court that its COMI is in the Netherlands—<u>after</u> nearly all of the events the Petitioner now claims resulted in a COMI shift for ICBV—only further supports barring the Petitioner from arguing differently before this Court.[54]  Similarly, as of the filing of the Verified Petition, neither ITI nor the Spanish Court had taken any action which could overcome the preclusive effects of ITI's prior representations and the Spanish Court's prior decision regarding its COMI.[55]  The subsequent filing of the RJ should not permit the Petitioner to play "fast and loose with the courts" of multiple countries.  *See New Hampshire v. Maine*, 532 U.S. 742, 750 (2001).

**B.      The Prior Brazilian Proceedings did not shift either ICBV's or ITI's COMI.**

19.     Even if the Petitioner were not barred from asserting that ICBV's and ITI's COMIs are in Brazil (which he is), any activities in Brazil related to the failed Prior Brazilian Proceedings have not shifted their COMIs and, as demonstrated in the AHG's prior briefing, the COMIs of ICBV and ITI are in the Netherlands and Spain.[56]

---

contradicts the Petitioner's own Spanish law expert on the realm of the possible under Spanish law.  Nov. 20, 2024 Hr'g Tr. 80:22-25 (Mr. Schwartz: "And if a Spanish court found that a company makes an affirmative statement, it cannot later go against that statement, correct?" Mr. Ruiz: "Correct.").

[52]      Verified Petition ¶ 62; Supplemental Br. ¶ 45.

[53]      *See* EJ Obj. ¶¶ 28-31 (describing similarities between COMI under the EIR, Model Law, and Chapter 15).

[54]      *See* ICBV Nov. Extension Request at ¶ 52; Dec. 5 Dutch Order ¶ 7.1. ("[ICBV] denies this and does not dispute that its COMI . . . is located in the Netherlands and has not changed in the past three months."); Suppl. Haentjens Dep. at 55:5-8.  ICBV has a fundamental procedural duty to provide the Dutch Court with all evidence, including any evidence that it has argued that its COMI is outside the Netherlands.  *See* JX-282, Ex. 24 ("<u>Supp. Van Galen Declaration</u>") ¶ 7.

[55]      *See* Pre-Insolvency Notice at 12.

[56]      *See* EJ Obj. ¶¶ 38–44.

1. *Restructuring activities in Brazil are neither relevant nor determinative with respect to the COMIs of ICBV and ITI.*

20.     The location of a debtor's restructuring activities is only one of many factors in a COMI analysis. *See, e.g., In re Modern Land (China) Co., Ltd.*, 641 B.R. 768, 786–87 (Bankr. S.D.N.Y. 2022).[57]  In this Circuit, the location of a debtor's restructuring activities is relevant to a COMI analysis where (a) joint liquidators or the equivalent are appointed, (b) the debtor's primary business activity is restructuring and most restructuring activities took place in a particular location, or (c) creditors overwhelmingly support recognition of a confirmed plan of reorganization or its equivalent. *See*, *e.g., Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.)*, 714 F.3d 127, 131, 138 (2d Cir. 2013) (describing appointment of liquidator in assessing relevance of restructuring activities); *In re Mod. Land*, 641 B.R. at 790 (restructuring efforts were debtor's "primary business activity"); *In re Sunac China Holding Ltd.*, 656 B.R. 715, 733 (Bankr. S.D.N.Y. 2024) (assigning "significant weight" to creditors' overwhelming support for restructuring scheme and lack of opposition to recognition).  None of these limited circumstances apply here.

21.     <u>First</u>, no joint liquidator-equivalents have taken substantial responsibility for the affairs or day-to-day management of ICBV or ITI.[58]  Indeed, the longest-tenured Court-appointed officer here is the Dutch observer, who is based in and focuses his activities in the Netherlands.[59]

22.     <u>Second</u>, for debtors-in-possession, courts have considered whether restructuring activities in a jurisdiction are the debtor's primary business activity.[60]  *In re Mod. Land*, 641 B.R. at 790.[61]  That is not the case here.  ICBV and ITI maintain business operations and restructuring

---

[57]     "[T]he Court considers the totality of the circumstances before it, including the goals of Chapter 15, the Scheme Creditors' expectations and intentions, the judicial role in the Cayman Scheme . . . the insolvency activities in the Caymans, Cayman choice of law principles and the Debtor's good-faith petition for recognition of the Cayman Proceeding." *Id.*
[58]     *See* Supplemental Br. ¶¶ 33, 35.
[59]     *See* Observer Dep. at 59:10–13 ("I am an officer of the Amsterdam court.").
[60]     *See* Supplemental Br. ¶ 32.
[61]     *See also In re Sunac*, 656 B.R. at 730.

proceedings in the Netherlands and Spain.[62]  ICBV has an office in the Netherlands,



[4]  Similarly, ITI has an office in Bilbao;

and

its contracts necessary to continue its business are with Spanish counterparties.[65]  The Petitioner

presents no evidence that any of the foregoing has changed since the Previous Petition Date.

23.    In addition, throughout and following the Prior Brazilian Proceedings, ICBV and

ITI undertook significant restructuring activities in the Netherlands, Spain, and New York.

ICBV's directors continue to be involved in the Dutch Proceedings (and were involved in the

Previous Chapter 15 Cases); the Dutch Court held multiple hearings and issued multiple orders;

ICBV retained advisors in the Netherlands, including De Brauw as legal counsel and PwC

Netherlands; and the Observer attended between 40 to 50 meetings, including at least two in person

in Amsterdam, related to ICBV's restructuring in the Netherlands (all but one of which De Brauw

attended).[66]  Although the Observer retained Brazilian counsel, the Observer expressly noted that

---

[62]    *See* EJ Obj. ¶¶ 38–44.

[63]    *See* Verified Petition ¶ 12 (registered office); JX-282, Ex. 8 ("Rabelo Dep.") at 118:4–11; 119:10–121:5.

[64]    *See* JX-282, Ex. 7 ("Stoop Dep.") at 51:23–52:14; Rabelo Dep. at 124:18–24; 142:21–25.

[65]    *See* Verified Petition ¶ 9 (location of registered office); JX-282, Ex. 11 ("Director and Employee List") (location of ITI's employees and directors); Rabelo Dep. at 260:6–20 (location of board meetings); Rabelo Dep. at 261:22–264:5 (noting directors cannot be controlled by affiliates); Rabelo Dep. at 274:13–16; 278:7–20 (ITI owns approximately $200 million of the NY Notes in New York); Pre-Insolvency Notice at 10–12; Ruiz Dep. at 81:5–14 (ITI's essential contracts are in Spain).

[66]    *See* Second Observer Report ¶¶ 4.2.2–4.2.5 (describing Dutch observers weekly communications with ICBV and its Board); July 31 Dutch Order; Dec. 5 Dutch Order; Second Observer Report ¶¶ 2.3, 4.4.3 (describing ICBV's retention of PwC); Observer Dep. at 63:14-20; 66:21-68:11 (describing three meetings held in person in Amsterdam and dozens of virtual meetings he attended from the Netherlands); Observer Dep. at 36:6–11.

this was for observation purposes only, and that his Brazilian counsel did not otherwise participate in any discussions in Brazil.[67]  And regardless of the outcome of any restructuring proceedings in Brazil, the Observer expressly confirmed that, for ICBV to successfully complete its WHOA proceeding, it must submit a restructuring plan to the Dutch Court that complies with Dutch law.[68] ITI similarly was active in the Spanish Proceedings, where the Spanish Court entered multiple orders, and the Previous Chapter 15 Cases.[69]  By contrast, considering that none of ICBV's third-party creditors and none of ITI's non-contingent creditors supported the EJ Plan,[70] it is difficult to believe that any significant restructuring took place with respect to either entity in Brazil, such that related activities in Brazil were either entity's primary business activity.  *See In re Creative Fin. Ltd.*, 543 B.R. 498, 511-12 (Bankr. S.D.N.Y. 2016) (finding BVI-based liquidator's minimal activity in the BVI insufficient to warrant finding that COMI shifted to the BVI).

24.    Further, activities related to the Prior Brazilian Proceedings are irrelevant to this Court's COMI determination.[71]  The latest event the Petitioner references was on November 22, 2024.[72]  Since that time, there is no evidence of any activities occurring in Brazil <u>at all</u>, other than the collapse of the EJ Proceeding (definitionally a non-activity) and the filing of the RJ.[73]  In any event, the AHG has appealed the plenary jurisdiction of the Brazilian Court over ICBV and ITI.[74]

---

[67]    *See* Second Observer Report ¶¶ 2.2, 4.4.12.
[68]    *See* Observer Dep. at 60:11-13 ("At the end of the day, such Dutch plan will have to tick the boxes of the WHOA and Dutch law requirements.").  While the Observer noted that the Brazilian entities are the "driving force" of the restructuring process, such comment was made in reference to the Prior Brazilian Proceedings, which, as discussed *infra* ¶ 24, are irrelevant to this Court's COMI determination in light of their abject failure.  *See* Observer Dep. at 39:17–40:23.  And regardless, as set forth *supra* ¶¶ 20–24 and *infra* ¶¶ 24–27, the Brazilian restructuring activities are not ICBV's or ITI's primary business activity and have no third-party creditor support.
[69]    *See* Spanish Acknowledgement; Verified Petition ¶ 29.
[70]    *See* EJ Plan at 93, 105 (demonstrating only Itau and Banco Bradesco, contingent creditors of ITI, confirmed support for the EJ Plan).
[71]    *See* Supplemental Br. ¶¶ 39–40.
[72]    *See* Verified Petition ¶ 34.
[73]    *Id.*  While the Petitioner states that the AHG filed the interlocutory appeal on November 22, it was actually filed on November 14.  *See* the EJ Interlocutory Appeal; Supplemental Br. ¶ 22.
[74]    *See* Verified Petition ¶ 34; Laquimia Decl. ¶ 12; RJ Interlocutory Appeal.

The AHG's participation in any restructuring activities related to the Prior Brazilian Proceedings in order to protect its rights, while challenging both the Brazilian Court's plenary jurisdiction and Chapter 15 recognition in this Court, should not weigh in favor of the Petitioner as to COMI.[75]

25.    Third, courts have looked to the location of a debtor's restructuring activities where there is overwhelming creditor support for recognition of a confirmed plan.[76]  *See In re Sunac*, 656 B.R. at 733.  That is not the case here.  No third-party creditor of ICBV supported the Prior Brazilian Proceedings or EJ Plan.[77]  And although some of ITI's contingent creditors supported the EJ Plan, it still lacked sufficient support for approval.[78]  Further, no plan of reorganization has been confirmed by a foreign court here, because the EJ Plan failed to garner creditor support.  *See, e.g.*, *id.* at 718 (foreign court approved scheme for which debtor sought recognition).

26.    In addition, the Petitioner's discussion of *Modern Land* and *Suntech* improperly conflates creditor expectations with creditor support.  But even creditor expectations under the Petitioner's analysis do not point towards Brazil.  The first restructuring activity related to ICBV was Redwood's filing of an involuntary WHOA petition in the Netherlands.[79]  Further, ICBV and ITI confirmed creditor expectations by asserting to the Dutch and Spanish courts that their COMIs were in the Netherlands and Spain.[80]  ICP's publication of announcements regarding the EJ

---

[75]    *Cf. Fuld v. Palestine Liberation Organization*, 82 F.4th 74, 89 (2d Cir. 2023) (defendant preserves defense of lack of personal jurisdiction where in-court appearance is limited to contesting personal jurisdiction).
[76]    *See also In re Suntech Power Holdings Co.*, 520 B.R. 399, 417 (Bankr. S.D.N.Y. 2014) (citing support of creditors holding 50% of operative notes for foreign restructuring as supporting finding of COMI).
[77]    *See supra* ¶ 10.
[78]    *See* Supplemental Br. ¶ 4 n.8; Pre-Insolvency Notice at 11–12.  As noted above, the Brazilian Court's plenary jurisdiction with respect to both entities was subject to a pending challenge at the time the EJ Proceeding collapsed. *See* Verified Petition ¶ 34; EJ Interlocutory Appeal.
[79]    *See* Redwood Petition.
[80]    *See supra* ¶ 18; ICBV Commencement Statement at 2; Pre-Insolvency Notice at 12.

Proceeding and RJ from Brazil changes nothing.[81]  Those publications were issued by ICP with

respect to multiple entities and they include no specific discussion relating to ICBV or ITI.[82]

27.     <u>Finally</u>, where courts have found a debtor's COMI to be in the location of its

restructuring activities over creditor objections, the COMI factors propounded in *In re SPhinX,*

*Ltd.*, 351 B.R. 103 (Bankr. S.D.N.Y. 2006) also strongly pointed to COMI in that location.[83]  Here,

the *SPhinX* factors overwhelmingly show that ICBV and ITI's COMIs lie outside of Brazil.[84]

       2.  *The Petitioner's additional factual arguments do not support a determination*
          *that ICBV or ITI have their COMIs in Brazil.*

       a.  <u>The principal places of business of ICBV and ITI are not in Brazil.</u>

28.     Courts may consider a debtor's "principal place of business" or "nerve center" as

part of a COMI analysis.  *See In re Serviços de Petróleo Constellation S.A.*, 600 B.R. 237, 276

(Bankr. S.D.N.Y. 2019) ("<u>*Constellation I*</u>") (the definition of principal place of business looks at

a corporation's nerve center, i.e., where a corporation's officers direct, control, and coordinate the

corporation's activities) (citations omitted).  But the facts demonstrate that neither ICBV nor ITI

have their principal place of business or nerve center in Brazil.  Moreover, these concepts do not

control the COMI analysis.  *See In re Fairfield Sentry Ltd.*, 714 F.3d at 138 n.10.  And the other

facts relevant here do not point towards Brazil for ICBV's or ITI's COMI either.

29.     <u>First</u>, the Petitioner overstates the significance of the Brazilian Bankruptcy Court's

holdings that the principal places of business of ICBV and ITI are in Brazil.[85]  This is irrelevant to

---

[81]     *See* Supplemental Br., Ex. C-F; Verified Petition ¶ 70.
[82]     *See* Supplemental Br., Ex. C-F.  The only references made to ICBV or ITI in ICP's press releases name the
entities or describe them as subsidiaries "in the Netherlands and Spain."  *See* Supplemental Br., Ex. C.
[83]     *See In re Betcorp Ltd.*, 400 B.R. 266, 285, 292 (Bankr. D. Nev. 2009) (finding COMI in location of liquidation
notwithstanding creditor objection, noting all COMI factors aside from location of creditors weighed toward COMI
in location of liquidation); *In re British Am. Isle of Venice (BVI), Ltd.*, 441 B.R. 713, 720–23 (Bankr. S.D. Fla. 2010)
(finding COMI in the location of liquidation, notwithstanding creditor objection, noting location of headquarters,
debtor's managers, 80% of assets, and books and records were all in BVI and weighed toward COMI determination).
[84]     *See* EJ Obj. ¶¶ 20–27; *infra* ¶¶ 33–37.
[85]     *See* Verified Petition ¶¶ 37, 59.

15

this Court's COMI analysis because these decisions addressed <u>plenary</u> jurisdiction over ICBV and ITI, a separate inquiry from this Court's COMI inquiry and, indeed, a separate inquiry from even COMI in Brazil.[86] Moreover, one such decision was the subject of a pending appeal when the EJ Proceeding collapsed and the other is also the subject of a pending appeal currently.[87]

30.    <u>Second</u>, the facts show that ICBV's principal place of business, or nerve center, is in the Netherlands and ITI's is in Spain. ICBV (i) has its registered office in Amsterdam, (ii) stated to the Dutch Court that it has an establishment in Amsterdam, which means under Dutch law that it conducts business there, (iii) holds board meetings from the Netherlands, and (iv) ██████████ ████████████████████████ As to ITI, it (i) maintains its registered office in Bilbao; (ii) ████████████████████████████████████████████; (iv) its essential contracts are located in and/or for services in Spain; and (v)███████████ ████████████████[89] The commencement of the RJ has done nothing to alter these facts.

31.    <u>Third</u>, the Petitioner's cases cites are inapposite. In *In re Serviços de Petróleo Constellation S.A.*, 613 B.R. 497, 512 (Bankr. S.D.N.Y. 2020) ("*Constellation II*"), the court noted that the "nerve center" analysis for the SPV at issue centered on where the SPV debtor's parent was located because the SPV was "wholly-owned and controlled by its parent." Likewise, in *In re OAS S.A*, 533 B.R. 83, 101-02 (Bankr. S.D.N.Y. 2015), this Court held that an SPV's nerve center was in Brazil, where the parent's nerve center was located, rather than where the SPV was incorporated, because the SPV maintained only a P.O. box in in its jurisdiction of incorporation,

---

[86]    *See* Laquimia Decl. ¶ 21 (explaining that the concept of principal place of business is "separate from the concept of COMI" under Brazilian law); Nov. 21, 2024 Hr'g Tr. 108:2-7 (The Court: "Was the determination for COMI by the Brazilian court necessary for it to reach its decision that it had jurisdiction over the Netherlands and Spanish entities?" Ms. Laquimia: "Based on our understanding and petitions, court did not have to find COMI.").
[87]    *See* Verified Petition ¶ 34; EJ Appeal Order.
[88]    *See* Verified Petition ¶ 67; ICBV Commencement Statement at 2; Rabelo Dep. at 118:4-11, 119:10–121:5, 258:11–14.
[89]    *See supra* ¶ 22; *see also infra* ¶ 35.

16

had just a handful of trade creditors there, and its board of directors had only convened once to appoint the foreign representative.  Neither ICBV nor ITI are controlled by their indirect parent, ICP.[90]  ICBV's directors make "independent judgment[s] on any decisions," and any action by ICBV requires the approval of one Dutch director.[91]  Similarly, ITI's board cannot be compelled to act by affiliates and makes all final decisions without direction or oversight by ICP.[92]  *Contra Constellation II*, 613 B.R. at 512 (finding that because the SPV was wholly-owned and controlled by its parent—i.e., all of the board directors of SPV were directors of parent—the nerve center test weighed in favor of COMI in parent's jurisdiction, Luxembourg).  ICBV and ITI also maintain business operations and restructuring proceedings in the Netherlands and Spain.[93]  *Contra OAS*, 533 B.R. at 101-02.

32.    <u>Finally</u>, principal place of business or nerve center is only one of many COMI factors and is not determinative by itself.  *See In re Fairfield Sentry Ltd.*, 714 F.3d at 138 n.10. Here, even if ICBV's and ITI's principal places of business or nerve centers were in Brazil (they are not), all other factors point to their COMIs being in the Netherlands and Spain.[94]

    b.    <u>Other relevant factors also weigh in favor of COMI outside of Brazil.</u>

33.    As demonstrated in the AHG's prior briefing, the COMIs of ICBV and ITI are not in Brazil, and the Petitioner's additional contrary factual arguments do not alter the analysis.[95]

---

[90]    ICBV and ITI are not "controlled" by ICP.  *See Rothstein v. Am. Int'l Grp., Inc.*, 837 F.3d 195, 206 (2d Cir. 2016) (defining control as the "direct or indirect power to govern the management and policies" of an entity); *see also Telenor Mobile Commc'ns AS. v. Storm LLC*, 587 F. Supp. 2d 594, 606 (S.D.N.Y. 2008) (analyzing functionally similar definitions of "control" for corporate purposes).

[91]    *See* Stoop Dep. at 51:21-52:14; *id.* at 24:6-25-16 (noting that decision-making in the Netherlands is a requirement for ICBV to benefit from certain tax treatment); Rabelo Dep. at 124:18-24; 142:21–25.

[92]    Rabelo Dep. at 261:22-264:5; Rabelo Dep. at 263:3-10 ("Q. Does [ICP] have the power to issue a direction to the board of ITI that they must take a certain action? A. What do you mean about "direction"? To impose you saying? Q. Sure. To order? A. No. I would say the same I said earlier in regard to [ICBV].").

[93]    *See supra* ¶¶ 22, 30.

[94]    *See* EJ Obj. ¶¶ 38–44.

[95]    *Id.  See also generally* Verified Petition ¶¶ 76-93, 97–110.

17

34.    <u>First</u>, the Petitioner claims that ICBV's and ITI's disputes are governed primarily by Brazilian law, yet points only to indirect impacts of Brazilian law on both.[96]  For ICBV, the Petitioner relies entirely on the fact that Brazilian law purportedly applies to the NY Notes' guarantors ICP and ICB.[97]  But the law governing most of <u>ICBV's</u> disputes weighs in favor of COMI in the Netherlands:  (i) the NY Notes—ICBV's largest obligation—are governed by New York law, and disputes with ICP and ICB regarding their guarantees would similarly be governed by New York law;[98] (ii) the Offering Memorandum explicitly contemplates that European or Dutch law would apply to ICBV's insolvency;[99] and (iii) ICBV is subject to Dutch corporate law and prepares its financial statements in accordance with Dutch GAAP.[100]  Likewise for ITI, the Petitioner relies on ITI's guarantee of the Debentures to argue that Brazilian law would primarily govern.[101]  However, the Petitioner elides that: (i) ITI is subject to Spanish corporate law; (ii) ITI's intercompany loans owed to ICBV are governed by Dutch law; and (iii) ITI's equity interests in ITI Argentina and Loma Negra are governed by Spanish and Argentinian law.[102]

35.    <u>Second</u>, contrary to the Petitioner's assertions, ICBV and ITI's minimal assets in Brazil are outweighed by their assets elsewhere.[103]  The Petitioner concedes that ICBV's "only material assets are receivables on account of <u>intercompany</u> loans."[104]  But its claim against ITI— which is approximately 90% of those receivables—is located in Spain, not Brazil.[105]  *See In re*

---

[96]         *See* Verified Petition ¶¶ 79-80, 101-02.
[97]         *Id.* at ¶ 79; *see also* Nov. 20, 2024 Hr'g Tr. 138:1-5 (admitting that the intercompany payable to ICP is the only legal agreement governed by Brazilian law that ICBV is a party to).
[98]         *See* Verified Petition ¶¶ 10, 18; EJ Petition, Ex. E (the "<u>Indenture</u>"), § 13.08.
[99]         *See* JX-282, Ex. 17 ("<u>OM</u>"), at 35.
[100]        *See* JX-182 (ICBV Annual Report 2023) at 11.
[101]        Verified Petition ¶¶ 101-02.
[102]        *Id*. at ¶ 102.
[103]        *Id.* at ¶¶ 76, 97.  The majority of ICBV and ITI's cash is in accounts outside of Brazil.  *See* Verified Petition, Ex. D, ¶ 52 (ICBV has $2 million of cash, predominantly denominated in Euros and none of which is in Brazil); Rabelo Dep. 218:2-222:4; *see also* JX-252; JX-253 (ITI bank accounts in Spain holding most of ITI's cash).
[104]        *See* JX-264 (the "<u>Petitioner's Responses and Objs.</u>") at 31 (emphasis added).
[105]        *See* JX-282, Ex. 9, Creditor List (ICP, ITI, ICBV); *see also* Nov. 20, 2024 Hr'g Tr. 138:24–140:8.

*Sunac*, 656 B.R. at 728–29 (location of debtor's primary assets—amounts owed by subsidiaries—was in location of subsidiaries). The sole Brazilian asset of ICBV remains a zero dollar balance account in Brazil.[106] Likewise, ITI's primary assets are located outside of Brazil. ITI's self-identified contracts necessary for its activities all relate to assets and/or services in Spain.[107] Additionally, ITI owns an indirect 52% equity interest in Loma Negra, an Argentine operating company, through the Spanish company ITI Argentina that ITI wholly owns.[108] And both entities' bank accounts in Brazil have only de minimis amounts.[109] Thus, the Petitioner's claim that the primary assets of ICBV and ITI are in Brazil is not supported by the facts.

36.    Third, where courts have considered the location of investor relations as relevant to COMI, they have done so amongst a number of operational factors, including the location of officers and shared financial and legal services.[110] Here, none of these operational factors point towards Brazil. ICBV has legal counsel in the Netherlands, maintains its books and records there and, despite the Petitioner's efforts to minimize the role of ICBV's board, ICBV's board decisions (which are not made in Brazil) are made "independent[ly]" of affiliates, and any board action requires the approval of at least one Dutch director.[111] Similarly, ITI has Spanish counsel, its sole employee, one of its directors, its books and records, its board decisions (which are made independently of affiliates), and the creditors necessary for its continued operations are all in

---

[106]    *See* Nov. 20, 2024 Hr'g Tr. 143:17-144:12.
[107]    *See* Pre-Insolvency Notice at 12.
[108]    Verified Petition ¶ 9. In the years predating these proceedings, its Argentine operations were comparable and oftentimes more profitable than in Brazil. *See, e.g.*, JX-226 at 11-12 (demonstrating higher Argentine EBITDA in 2024Q2); JX-67 at 11-12 (demonstrating higher Argentine EBITDA in 2021Q4); JX-163 at 9 (demonstrating higher Argentine EBITDA in 2023Q3); JX-110 at 11-13 (demonstrating higher Argentine EBITDA in 2023Q1).
[109]    *See supra* n.103.
[110]    *See Constellation I*, 600 B.R. at 289.
[111]    *See* Nov. 21, 2024 Hr'g Tr. at 102:22-103:14, 123:3-9; Verified Petition ¶ 75; Stoop Dep. at 51:23–52:14; Rabelo Dep. at 124:18–24; 142:21–25; Verified Petition ¶ 71. ICBV's board has also retained separate Dutch legal counsel. *See* Supplemental Br., Ex. A ¶ 4.2.5.

Spain.[112]  Moreover, ICP's provision of general group-wide information to investors from Brazil

is not determinative for creditor expectations, let alone COMI overall.  Courts have consistently

relied on the contents of offering memoranda to determine objective creditor expectations.[113]

Although the Petitioner broadly points to risk factors relating to Brazil, such references are general

to the InterCement entities as a whole or to their "Brazilian operations."[114]  It is undisputed that

neither ICBV nor ITI have operations in Brazil.  And with respect to ICBV, the NY Notes' offering

memorandum highlighted the international scope of the InterCement entities across South

America, Europe and Africa, and explicitly stated "any insolvency proceedings with respect to the

issuer [(i.e., ICBV)] in the EEA (excluding Denmark) would most likely be based on and governed

by the insolvency laws of the Netherlands."[115]  ICP's practice of addressing group-wide investor

relations from Brazil, rather than specifically with respect to ICBV or ITI, cannot trump the more

specific operational ties and creditor expectations pointing towards the Netherlands and Spain.[116]

37.    Finally, no one can credibly claim the RJ would "maximize the value of [ICBV's

or ITI's] assets" at present.[117]  Considering the collapse of the Prior Brazilian Proceedings, and the

lack of evidence of any restructuring currently taking place in the RJ, this is simply *ipse dixit*.[118]

---

[112]    *See* Nov. 20, 2024 Hr'g Tr. 97:21-98:4, 104:9-105:3; Verified Petition ¶ 96.
[113]    *See In re OAS*, 533 B.R. 83, 101–03 (Bankr. S.D.N.Y. 2015).
[114]    *See* OM at 15-16; Verified Petition ¶ 79.
[115]    *See* OM at 1–2, 35, 57–58; EJ Obj. ¶ 11, 40–42.
[116]    *See supra* ¶¶ 22, 30; *see also, e.g.,* Verified Petition ¶¶ 70, 86-87 (discussing ICP's practice of providing general group-wide information to all investors).  Notably, in the last three years, nearly all announcements posted by ICP on its investor relations website have been framed as announcements by ICP or other non-debtor entities to the market, <u>not</u> ICBV or ITI.  *See* InterCement, *Investor Relations*, https://intercement.com/en/investidores/ (last visited Jan. 31, 2025).
[117]    *See* Verified Petition ¶¶ 63, 93, 110.
[118]    The Chapter 15 Debtors prior actions demonstrate they had no intention of using the EJ Proceeding to "maximize" value for the benefit of creditors.  *See* EJ Obj. ¶¶ 13–14.

20

## II.    This Court Should Also Deny Foreign Nonmain Recognition Because Neither ITI nor ICBV Have an Establishment in Brazil.

38.    Neither ITI nor ICBV have establishments in Brazil.[119]  Nothing since the Previous Petition Date supports a Brazilian establishment for either.[120]

39.    The Petitioner bears the "rather high" burden of proving that ITI and ICBV have an establishment in Brazil.  *In re Kemsley*, 489 B.R. 346, 362 (Bankr. S.D.N.Y. 2013).  He can only meet this burden by proving that <u>each</u> debtor has an establishment in Brazil, and may not rely on the activities of a debtor's affiliates.  *See In re Mood Media Corp.*, 569 B.R. 556, 562-63 (Bankr. S.D.N.Y. 2017) (activities of Canadian parent do not suffice to show U.S. debtors maintained an establishment in Canada).  An establishment is a place of business from which local, market-facing activities are conducted.  *Id.* at 562.  This "place of business" must be a physical one.  *See In re Creative Fin.*, 543 B.R. at 520 (Bankr. S.D.N.Y. 2016) (establishment requires conducting business in a country from a "seat for local business activity") (quotations omitted); *In re Mood Media*, 569 B.R. at 562 (U.S. debtors lack establishment in Canada because "the U.S. companies…have no office or physical presence of any kind in Canada").[121]  An establishment must also have "a local effect on the marketplace."  *In re Creative Fin.*, 543 B.R. at 520; *see also In re Mod. Land*, 641 B.R. at 786 ("The failure to engage the local economy excludes the Debtor

---

[119]    *See* EJ Obj. ¶¶ 45–48; Nov. 21, 2024 Hr'g Tr. at 99:7–101:9.

[120]    *See* 11 U.S.C. §§ 1502(2), (5).  "Courts analyze whether a debtor has an establishment as of the petition date."  *See, e.g.*, *In re Mod. Land*, 641 B.R. at 784.

[121]    The Petitioner is wrong that an establishment does not require a physical presence.  *Contra* Verified Petition ¶ 122 n.36.  In *Millenium*, the court found an establishment in Bermuda because "the Funds accepted and processed investors' cash deposits in Bermuda, kept some or all of their books of account in Bermuda, and were subject to the control of directors, a majority of whom were located in Bermuda.."  *In re Millennium Glob. Emerging Credit Master Fund Ltd.*, 458 B.R. 63, 85 (Bankr. S.D.N.Y. 2011).  *Videology* and *Constellation II* also addressed physical presences attributed to the debtors.  *See In re Matter of Videology Ltd.*, [2018] EWHC 2186, [¶80] (Ch) (Snowden, J.) (relying on presence of director and management in Baltimore); *Constellation II*, 613 B.R. at 502 (noting Brazilian offices and all of debtor's assets in Brazil).  Finally, *In re SPhinX* did not analyze establishment at all, and its cursory conclusion of nonmain recognition (which was not contested) was based solely on the court's view that "no negative consequences would appear to result from recognizing the Cayman Islands proceedings as nonmain proceedings."  *In re SPhinX, Ltd.*, 351 B.R. at 122.

21

from a foreign nonmain classification."); *Trs. of Olympic Airlines SA Pension and Life Assurance Scheme v Olympic Airlines SA* [2015] UKSC 27, [13] (activities of an establishment "must be activities which by their nature involve business dealings with third parties").[122]  It is well-established that "[t]he [foreign] restructuring cannot itself constitute nontransitory economic activity to support recognition as a foreign nonmain proceeding." *See In re Mod. Land*, 641 B.R. at 785.  The presence of debts or assets, too, is insufficient for an establishment. *See id.*; *In re Pirogova*, 593 B.R. 402, 415 (Bankr. S.D.N.Y. 2018).

40.    <u>First</u>, neither ICBV nor ITI have a physical place of business in Brazil.  ICBV and ITI do not have offices, operations, or employees in Brazil, do not pay taxes in Brazil, and collectively have less than five dollars in Brazilian bank accounts.[123]  In any event, any operations in Brazil by ICBV or ITI have no effect on the Brazilian economy.  ICBV's "only assets consists of receivables on account of intercompany loans,"[124] and its only material third-party creditors are Noteholders based <u>outside</u> of Brazil.[125]  Similarly, ITI's self-identified essential contracts to continue its activities relate solely to assets in Spain and/or the delivery of services in Spain by Spanish counterparties.[126]  ITI's only material contracts with persons in Brazil are its contingent

---

[122]    Chapter 15's definition of establishment was "taken from Model Law article 2, with only minor language variations necessary to comport with United States terminology." H.R. Rep. No. 109-31(I) (2005), at 107.  Courts in this District therefore often rely on foreign interpretations of establishment under the Model Law.  *In re Millennium*, 458 B.R. at 84 ("Notwithstanding the paucity of U.S. authority, there are U.K. cases that have construed the same term 'establishment' as used in the U.K. version of the Model Law and the EU Regulation."); *see also Constellation I*, 600 B.R. at 271 n.27, 277 (noting "slight[]" wording variation but relying on U.K. authority on establishment).
[123]    *See* Rabelo Dep. at 80:24–81:9 (ICBV lacks office in Brazil); 251:5–25 (ITI lacks office in Brazil); 224:15–225:17 (ICBV pays no taxes in Brazil); 144:17–22; 245:3–12 (same); 220:3–221:25 (ICBV bank accounts); 105:7–106:4 (same); 123:2–12 (ICBV has no employees in Brazil); Nov. 20, 2024 Hr'g Tr. at 110:14–111:16 (ITI bank accounts); Director and Employee List (ITI has no employees in Brazil).
[124]    Petitioner's Response and Objs. at 31.
[125]    *See* Rabelo Dep. at 223:2–225:17; OM at iii-iv (prohibiting sale of Notes in Brazil).  *Cf. Olympic Airlines* [2015] UKSC 27, [13] (activities of an establishment "must be activities which by their nature involve business dealings with third parties"); *In re Creative Fin.*, 543 B.R. at 520 ("The terms 'operations' and 'economic activity' require a showing of a local effect on the marketplace."); *see also In re Pirogova*, 593 B.R. at 415 (assets insufficient for establishment).
[126]    *See* Ruiz Dep. at 81:5–14.

guarantee obligations on the Debentures, but contingent debt obligations are not sufficient to give rise to an establishment.  *See In re Mod. Land*, 641 B.R. at 785; *In re Mood Media*, 569 B.R. at 562 ("guarantors of debt obligations that were issued in Canada" lack establishment in Canada).

41.    The Petitioner cannot compensate for ITI's lack of a physical presence in Brazil by attributing ICB's Brazilian operations to ITI based on ITI's ownership of ICB's shares.  *Contra* RJ Petition ¶ 127.[127]  ITI's passive ownership of ICB's shares in Brazil does not give rise to an establishment.  *In re Pirogova*, 593 B.R. at 415 (citing *Ran*, 607 F.3d at 1027) ("The mere presence of an asset in a given location, by itself, however, is insufficient to constitute a place of operations.").[128]  And *Constellation II*'s passing discussion of establishment is of little help to the Petitioner because it largely restates the conclusion of *Constellation I*, in which the objectors conceded nonmain recognition, *see Constellation I*, 600 B.R. at 282, and all of the debtor's assets were in the country of the proceedings, *Constellation II*, 613 B.R. at 512–13.  Here, by contrast, the AHG has not conceded nonmain recognition and ITI's primary assets are outside of Brazil.[129] In any event, this argument cannot apply to ICBV which has no ownership of any Brazilian entities.

42.    Second, general group-wide investor relations services performed by ICP personnel based in Brazil does not transform ICP's headquarters into an establishment for ICBV or ITI.  The Petitioner offers no legal or factual basis to impute the actions of ICP's employees to ICBV or ITI.  Nonmain recognition is based on the actions of the debtor itself, and centralized activities at a group's headquarters such as "management, financial management, cash management, accounting, treasury, internal audit, legal, risk management, human resources, and procurement functions" do

---

[127]    Nonmain recognition is evaluated on a debtor-by-debtor basis, and therefore ITI itself must maintain an establishment in Brazil for nonmain recognition.  *In re Mood Media*, 569 B.R. at 562.  The Petitioner offers no legal or factual basis to effectively pierce the corporate veil and impute the activities of ITI's subsidiaries to ITI, and the evidence in fact shows that ITI acted independently of any Brazilian entities.  *See* Rabelo Dep. at 261:22–264:5.

[128]    *See also In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. 122, 131 n.12 (Bankr. S.D.N.Y. 2007).

[129]    *Supra* ¶ 35.

23

not give rise to an establishment for each group member. *Cf. Mood Media*, 569 B.R. at 562 (no establishment despite extensive operations at group's headquarters in country of restructuring). Further, nothing in the record suggests that ICP's activities were conducted pursuant to intercompany contracts with ICBV or ITI.[130]  In fact, the only person purportedly conducting investor relations from Brazil who was associated with ICBV—Mr. Zangari—conducted any such outreach in his capacity as an officer of ICP.[131]  In any event, any such investor relations services purportedly performed on behalf of ICBV were not directed at the local Brazilian economy; they were directed at the Noteholders, who were all based <u>outside</u> of Brazil.[132]

43.    <u>Third</u>, events after the Previous Petition Date confirm that ICBV and ITI lack establishments in Brazil.  The Petitioner asserts that ICBV and ITI have establishments in Brazil because they responded to diligence requests from the AHG, maintained a data room related to these requests, attended diligence meetings with the AHG's advisors, attended mediation sessions with the Debenture holders, and structured the EJ Plan there.  Supplemental Br. ¶¶ 53–54.  But restructuring proceedings themselves are not an establishment, *see In re Mod. Land*, 641 B.R. at 785, and all of these activities were part of or directly related to the Prior Brazilian Proceedings.

44.    <u>Fourth</u>, none of the Petitioner's remaining cases support finding an establishment. *Videology* does not help the Petitioner because there the debtor's sole director and management

---

[130]    To be sure, even if intercompany services contracts between ITI and ICBV and ICP or ICB did belatedly materialize, those would not suffice to give rise to an establishment either. *Cf. In re Mood Media*, 569 B.R. 556, 562–63 ("[T]he U.S. companies may have contracts or contacts of various kinds with affiliates, franchisees, or distributors in Canada, but nothing was identified that showed that the U.S. companies themselves have places of operations in Canada, from which outward-facing market activities of any kind were conducted.").

[131]    *See* Verified Petition ¶ 70 ("All investor relations . . . were performed by ICP's officers and employees . . .in Brazil"); Nov. 20, 2024 Hr'g Tr. 335:18–23 (Mr. Rabelo stating that investor relation services provided to ICBV were provided by "the Brazilian directors of ICP."); *see also* Verified Petition ¶ 86 (only Paulo Diniz, Marco Zangari, Nicholas Baines and Gabriel Motta performed investor relations).  Although Karina Skarbnik is both an ICP employee and a director of ITI, the Petitioner does not assert that she engaged in any investor relation services.

[132]    *See* Nov. 20, 2024 Hr'g Tr. at 132:5–21.  The Petitioner does not assert any facts suggesting investor relation services were performed on behalf of ITI, and instead only asserts such services were performed on behalf of ITI between the Previous Petition Date and the Petition Date.  *See* Supplemental Br. ¶¶ 53–54.  But as discussed *infra* ¶ 43, restructuring proceedings themselves do not constitute an establishment.

24

were located in the jurisdiction of the establishment, and the UK court collapsed the entities of the corporate group in contravention of well-established law in this Circuit.  *Compare Videology*, [2018] EWHC 2186, [¶¶ 55, 80], *with In re Mood Media Corp.*, 569 B.R. at 562.   And in any event, both ICBV and ITI have their own boards with local directors that meet locally.[133]  The Petitioner also cites *In re Millennium Global*, 458 B.R. at 85 to assert that capital in local banks and engagement of local counsel is sufficient.[134]  But case law is clear that assets alone are insufficient for nonmain recognition, and both ICBV and ITI lack Brazilian bank balances exceeding five dollars.  *In re Pirogova*, 593 B.R. at 415; *Bear Stearns*, 374 B.R. at 131 n.12.  And permitting ICBV's and ITI's retention of Brazilian counsel for purposes of the Prior Brazilian Proceedings to tip the scales would effectively circumvent the well-established rule in this Circuit that restructuring proceedings cannot create an establishment (and would render the establishment analysis a practical nullity).  *See In re Mod. Land*, 641 B.R. at 785.

45.    Finally, the Petitioner cites *Modern Land* to claim that nonmain recognition would serve the purposes of the Model Law.[135]  But that case denied nonmain recognition because the Cayman debtor lacked even assets in the Caymans.  *In re Mod. Land*, 641 B.R. at 784.  The Petitioner's argument that this Court should grant nonmain recognition as to ICBV and ITI, despite their lacking establishments, because they (in the view of the Petitioner) have assets in Brazil would revert to the asset-based recognition approach that Chapter 15 rejected.  *Bear Stearns*, 374 B.R. at 131 n.12 (Chapter 15's "definition of establishment arose from the rejection, in relation to the EC Regulation, of the presence of assets as a sufficient basis for taking local jurisdiction.").

---

[133]    *See* Stoop Dep. at 51:23–52:14; Rabelo Dep. at 118:4–11; 119:10–121:5; 124:18–24; 142:21–25; Rabelo Dep. at 253:8–14; 260:6–20; 261:22–264:5.

[134]    Verified Petition ¶ 122.

[135]    Verified Petition ¶¶ 130–31.

25

## **CONCLUSION**

For the foregoing reasons, this Court should deny recognition as to ICBV and ITI.


Dated:  January 31, 2025                Respectfully Submitted,
        New York, New York

                                        CLEARY GOTTLIEB STEEN & HAMILTON LLP

                                        /s/ *Luke A. Barefoot*
                                        Richard J. Cooper
                                        David H. Botter
                                        Luke A. Barefoot
                                        Thomas S. Kessler
                                        David Z. Schwartz
                                        Thomas Q. Lynch
                                        One Liberty Plaza
                                        New York, New York 10006
                                        Telephone:  (212) 225-2000
                                        Facsimile:  (212) 225-3999

                                        *Counsel to the Ad Hoc Group*